**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| | ) | CASE NO. 15-21416 (AMN) |
| THORNTON & CO., INC., | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| BONNIE C. MANGAN, Chapter 7 Trustee for THORNTON & CO., INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 17-02062 |
| | ) | |
| NATHAN DeANGELIS and KERRY GANNON DeANGELIS, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
(NATHAN DeANGELIS and KERRY GANNON DeANGELIS)**

TO:   THE HONORABLE ANN M. NEVINS
       UNITED STATES BANKRUPTCY JUDGE

Bonnie C. Mangan, Chapter 7 Trustee (the "Trustee") for Thornton & Co., Inc., by and through her undersigned counsel, hereby respectfully submits this motion (the "Motion") for an order, pursuant to Federal Rule of Bankruptcy Procedure 9019(a), approving the proposed settlement between the Trustee and the Nathan DeAngelis ("Nathan") and Kerry Gannon DeAngelis (collectively, the "Settling Defendants") involving the recovery of monies and property.

In support thereof, the Trustee represents as follows:

## BACKGROUND

1.      On August 10, 2015 (the "Petition Date"), Debtor Thornton & Co., Inc. filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code.

2.      On December 10, 2015, the Court converted the Debtor's bankruptcy case to a case under Chapter 7 of the United States Bankruptcy Code and appointed Bonnie C. Mangan as Chapter 7 Trustee for Thornton & Co., Inc.

3.      The Trustee has investigated and pursued certain avoidable transfers of the Debtor's property, including those transfers that could be avoided as preferential and/or fraudulent transfers.

4.      Nathan was, at all times relevant hereto, an equityholder in the Debtor, with the ability to assert control over the Debtor's business practices.

5.      The Debtor was a subchapter S corporation and its corporate income and losses were passed through the corporation to its equityholders.

6.      As a result, the Debtor's shareholders had an obligation to report the Debtor's income or losses on their own tax returns and pay taxes thereon.

7.      The Trustee has concluded that, in 2014, Nathan caused the Debtor to make estimated quarterly tax payments to the Internal Revenue Service ("IRS") and the Connecticut Department of Revenue Services ("DRS") for the benefit of the Settling Defendants.

8.      Based upon the Debtor's financial books and records, the Trustee has determined that the Debtor made the following transfers to the IRS, on behalf of the Settling Defendants in order to satisfy the Settling Defendants' estimated quarterly income tax obligations to the IRS within two (2) years of the Petition Date:

| DATE | AMOUNT |
|---|---|
| 1/13/2014 | $ 45,000.00 |
| 4/17/2014 | $ 12,686.00 |
| 7/2/2014 | $ 45,000.00 |
| 9/18/2014 | $ 45,000.00 |
| **Total:** | **$147,686.00** |

(collectively, the "IRS Transfers").

9. Further, based upon the Debtor's financial books and records, the Trustee has determined that the Debtor made the following transfers to the DRS on behalf of the Settling Defendants in order to satisfy the Settling Defendants' estimated quarterly income tax obligations to the DRS within two (2) years of the Petition Date:

| DATE | AMOUNT |
|---|---|
| 1/9/2014 | $ 9,000.00 |
| 4/17/2014 | $ 4,331.00 |
| 7/1/2014 | $ 9,000.00 |
| 9/18/2014 | $ 9,000.00 |
| **Total:** | **$ 31,331.00** |

(collectively, the "DRS Transfers").

10. The Debtor, however, suffered a net loss of $1,203,024.00 in 2014 and reported that loss to the IRS and DRS.

11. As a result, the Settling Defendants did not have any taxable income in 2014.

12. The Settling Defendants' Form 1040 filed with the IRS indicated that the Settling Defendants had overpaid their federal taxes for 2014 by $177,330.00.

13. The Form 1040 filed by the Settling Defendants with the IRS indicated that the Settling Defendants requested a refund of $127,500.00.

14. Upon information and belief, the Settling Defendants received a refund of the overpayment of their federal income tax for 2014 in the amount of $127,500.00, even though the Debtor – and not the Settling Defendants – had paid their estimated quarterly taxes for 2014.

15. Additionally, the Settling Defendants retained $49,830.00 on account with the IRS to be applied to their future tax liability.

16. The Settling Defendants' Form CT-1040 filed with the DRS indicated that the Settling Defendants had overpaid their Connecticut income taxes for 2014 by $38,803.00.

17. The Form CT-1040 filed by the Settling Defendants with the DRS indicated that the Settling Defendants requested a refund of $30,000.00.

18. The Settling Defendants received a refund of the overpayment of their Connecticut income tax for 2014 in the amount of $30,000.00, even though the Debtor – and not the Settling Defendants – had paid their estimated quarterly taxes for 2014.

19. Additionally, the Settling Defendants retained $8,803.00 on account with the DRS to be applied to their future tax liability.

20. Subsequent to the commencement of this action, Jeffrey Hellman, Esq., counsel to the Settling Defendants, furnished proof to the Trustee that the Settling Defendants had paid $133,000.00 to People's United Bank ("PUB"), in order to be applied as a paydown of the Debtor's debt owed to PUB, the repayment of which had been personally guaranteed by Nate.

21. In order to avoid unnecessary time and expense, the parties have decided to settle this dispute.

## SUMMARY OF SETTLEMENT TERMS

22. Pursuant to the settlement contemplated herein: (a) the Settling Defendants shall pay the Trustee the sum of Thirty-Five Thousand **($35,000.00)** Dollars, payable as follows: **$20,000.00** will be paid to the Trustee by no later than November 22, 2017, to be held in escrow pending this Court's approval of this motion, with the remaining **$15,000.00** to be paid by no later than July 1, 2018, and (b) The Trustee, on behalf of the Debtor's Estate, on the one hand, and the Settling Defendants on the other hand, will release each other of any all claims that were asserted or could have been asserted from the beginning of the world through date of this motion.

23. In the event that the second portion of the settlement amount is not timely paid, and the Settling Defendants fail to make the payment within seven (7) days after notice is provided to their appearing counsel via electronic mail, the Trustee or her counsel may file an affidavit of nonpayment and judgment shall enter against the Settling Defendants and in favor of the Trustee in the of **$29,000.00** after five (5) business days of the filing said affidavit, unless the Settling Defendant files with the Bankruptcy Court evidence that the Settlement Amount was, in fact, timely paid.

## STANDARDS FOR SETTLEMENTS PURSUANT
## TO FED. R. BANKR. P. 9019(a)

24. Fed. R. Bankr. P. 9019(a) provides that "on motion by the trustee and after notice and a hearing, the bankruptcy court may approve a compromise or settlement." The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical matter, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." In re Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25, 88 S. Ct. 1157, 1163, 20 L. Ed. 2d 1, 9-10 (1968). The settlement of time-consuming and burdensome litigation, especially in the

bankruptcy context, is encouraged. In re: Penn Central Transportation Co., 596 F.2d 1002 (3d Cir. 1979).

25. Approval of a proposed settlement is within the "sound discretion" of the bankruptcy court. In re Neshaminy Office Buildings Associates, 62 B.R. 798, 803 (E.D. Pa. 1986). The court must determine whether the proposed settlement is in the "best interests of the estate." See In the Matter of Energy Cooperative, Inc., 886 F.2d 921, 927 (7th Cir. 1989). In determining whether to approve a compromise, the bankruptcy court should apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process, in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, Inc., 390 U.S. at 424-25.

26. The bankruptcy court should consider five factors in striking the balance between the value of the compromise and the value of the claim: 1) the probability of success in the litigation; 2) the likely difficulties in collection; 3) the complexity of the litigation; 4) the expense, inconvenience and delay necessarily attending it; and, 5) the paramount interest of the creditors. In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir. 1992), cert. dismissed, 506 U.S. 1088, 113 S. Ct. 1070, 122 L. Ed. 2d 497 (1993). The court should not substitute its judgment for that of a trustee. Neshaminy Office Building Associates, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the

range of reasonableness.  In re W.T. Grant and Co. 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983).  In addition, "because the bankruptcy judge is unequally situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion."  Neshaminy Office Building Associates, 62 B.R. at 803 (citing, In re Patel, 43 B.R. 500, 505 (N.D. Ill. 1984).

27.     In the Trustee's judgment, this settlement is in the best interests of the Estate and permits the Estate to avoid the risks and expenses associated with litigation.  Based upon the Trustee's analysis, the Debtor paid estimated taxes to the IRS and DRS, for the benefit of the Settling Defendants, in the aggregate amount of **$179,017.00**.  Thereafter, however, the Settling Defendants transferred **$133,000.00** in order to pay down the Debtor's secured debt owed to PUB.  Although Nate clearly benefitted by paying down the Debtor's liability to PUB, to the extent that he paid down that obligation, the Debtor's estate was not depleted by more than $46,017.00 by virtue of its aforementioned transfers to the IRS and DRS.  Therefore, it appears to the Trustee that the maximum recovery in this case would not exceed **$46,017.00** ($179,017.00 less $133,000.00).  Due to the relatively small difference between the gross amount that the Trustee could pursue **($46,017.00)** and the agreed upon amount of the settlement **($35,000.00)**, the Trustee believes that it would best serve the interests of the Estate to settle all claims between the Estate and the Settling Defendants without incurring any additional expenses related to the prosecution of this adversary proceeding or post-judgment collection efforts.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the annexed Order to approve the proposed settlement pursuant to Fed. R. Bankr. P. 9019(a) and grant such other and further relief as the Court shall deem just and proper.

Dated at Milford, Connecticut, this 10th day of November, 2017.

        THE TRUSTEE,
        BONNIE C. MANGAN,

By: /s/ Lawrence S. Grossman
    Lawrence S. Grossman [ct15790]
    David C. Shufrin [ct29230]
    HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
    147 North Broad Street
    Milford, CT 06460
    Tel: 203-877-8000/Fax: 203-878-9800
    LGrossman@hssklaw.com
    DShufrin@hssklaw.com